IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

BRANDON LEE CAUDLE, #20711-058

Petitioner,

v.                                          Case No.: GJH-16-4066

TIMOTHY S. STEWART, WARDEN

Respondent.

* * * * * * * * * * * * *

## MEMORANDUM OPINION

While confined at the Federal Correctional Institution ("FCI") in Cumberland, Maryland,[1] Brandon Lee Caudle, a U.S. Bureau of Prisons (BOP) inmate, filed a 28 U.S.C. § 2241 Petition challenging his August 2014 disciplinary report that was issued while he was incarcerated at the Federal Correctional Institution in Elkton, Ohio. In that report, Caudle was charged with a Code 196 violation occurring on March 24, 2014, for "use of the mail for an illegal activity." ECF No. 5-2 at 26–29. Presently pending before the Court is Respondent's Motion to Dismiss or, in the Alternative, for Summary Judgment filed by Respondent on March 3, 2017. ECF No. 5. Caudle has filed a Response and Respondent has filed a Reply. ECF No. 7, ECF No. 8. The Motion is ready for disposition, and a hearing is unnecessary. *See* Local Rule. 105.6 (D. Md. 2016). For reasons set forth below, Respondent's Motion, construed as a Motion for Summary Judgment, is granted.

---

[1] Caudle is now confined at the Federal Correctional Institution in Butner, North Carolina. ECF No. 9.

I. BACKGROUND

Caudle is currently serving an 89-month sentence following his December 2013 convictions for mail fraud and aggravated identity theft in the United States District Court for the Eastern District of Virginia. ECF No. 5-2 at 9; *see also United States v. Caudle*, Criminal No. HEH-13-0154 (E.D. Va.). On March 26, 2014, during a review of mail at FCI Elkton, an outgoing letter was discovered with another inmate's (Willard Macallaster's) return address, but apparently written in Caudle's handwriting. ECF No. 5-2 at 17. The envelope was opened, revealing a letter written to the Better Business Bureau complaining about an account with a bank (Household Bank). *Id.* The letter, "admittedly"[2] written by Caudle, stated that the other inmate was a victim of identity theft while incarcerated, and wanted the bank to investigate the account. *Id.* Attached to the letter was a purported Bureau of Prisons' memo from Case Manager "B. Cooke" of FCI Elkton, claiming that the other inmate had been in continuous custody since his arrest in 1999 to the present. *Id.* However, there is no case manager at FCI Elkton by the name of B. Cooke. *Id.* Additionally, an inmate incarceration history was generated from the BOP national inmate data bank (Sentry), which revealed that the other inmate had been released from August 29, 1996, to May 28, 2013. ECF No. 5-2 at 2–3.

On March 31, 2014, pursuant to BOP policy, FCI Elkton Special Investigative Services ("SIS") staff referred the matter to the Youngstown, Ohio FBI Field Office, noting that Caudle appeared to be involved in several forms of fraud via mail, e-mail, and telephone, using other inmates with bad credit and fraudulent BOP documents. ECF No. 5-2 at 3. When referred to the FBI, the local investigation conducted by BOP staff at FCI Elkton was suspended. Respondent

---

[2] This language comes from the Incident Report. ECF No. 5-2 at 17. It is unclear who admitted that it was written by Caudle.

2

states that the internal disciplinary process was suspended in order to ensure the integrity of the federal investigation and potential prosecution. *Id.*

On May 6, 2014, BOP personnel received information from another bank (GE Capital Retail Bank) that they had also received correspondence from another inmate who, with help from Caudle, was claiming identity theft with a forged BOP document as proof of incarceration. *Id.* at 17. The other inmate used this forged BOP document to falsely claim identity theft in order to illegally clear accounts. *Id.*

On May 21, 2014, the FBI accepted the matter for prosecution. *Id.* at 4. On August 7, 2014, all relevant information and material was released from the FBI. *Id.* at 17. At that point, the FCI Elkton SIS staff concluded their mail fraud inquiry and an incident report was delivered to Caudle and the other inmate. *Id.* Caudle received his incident report on August 7, 2014, charging him with "use of the mail to further criminal activity," a violation of disciplinary Code 196. *Id.*

On August 13, 2014, a Unit Discipline Committee ("UDC") was conducted. *Id.* The UDC referred the incident report to the Disciplinary Hearing Officer ("DHO") for sanctions not available at the UDC level. *Id.* Caudle received a copy of his rights and requested a staff representative, but declined to request any witnesses to appear on his behalf. ECF No. 5-2 at 4, 21, 24.

DHO Montgomery conducted a disciplinary hearing on September 22, 2014. ECF No. 5-2 at 26. At the outset of the hearing, Caudle was read his due process rights and given the opportunity to review them with his staff representative, Ms. Baker. *Id.* At the hearing, Baker indicated: "Inmate Caudle wanted me to ensure his due process rights were upheld during this disciplinary process and during the DHO hearing. I have reviewed the DHO Packet to include all

3

evidence, and I have no concerns." *Id.* Caudle declined to call any witnesses, to present documentary evidence, or make a statement on his own behalf. *Id.* DHO Montgomery informed Caudle that his silence would be used as a negative inference against him. *Id.* at 28. During the hearing, the DHO also considered the reporting officer's written account of the incident and photocopies of the documented evidence. *Id.* at 27. These documents included "mail envelope information, a memorandum from 'B. Cooke,' Case Manager, a letter to the Better Business Bureau, the USMS prisoner tracking system, fax cover sheet, a letter to Tammie A. Smith, a corporate specialist in fraud solutions, a bank memo and a CFPB-portal[3] complaint detail submitted by the FCI Elkton SIS Department." *Id.* at ¶ 12.

The DHO found that the greater weight of the evidence supported a finding that Caudle committed "the prohibited act of using of the mail to commit, or aid in the commission of a crime or a greatest category prohibited act (aiding/attempted)." *Id.* at 28. DHO Montgomery sanctioned Caudle with 40 days disallowance of good conduct time and 60 days of disciplinary segregation (suspended pending 180 days of clear conduct). *Id.* Caudle was subsequently criminally charged with mail fraud, presumably on identical facts, in federal court in Ohio, pled guilty to all three counts of mail fraud, and was sentenced to 41 months imprisonment. ECF No. 1. Caudle unsuccessfully appealed the DHO decision at the Regional and Central Office levels of the BOP. *Id.* at 40.

On December 22, 2016, Caudle filed this action, seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241. ECF No. 1. Caudle claims that his Fifth Amendment and Due Process rights were violated during his hearing. Specifically, Caudle claims that the administrative hearing should have been suspended while his parallel criminal charges for the same conduct were pending. ECF No. 1 at 7. Furthermore, in his Response to Respondent's Motion to Dismiss,

---

[3] The CFPB is the acronym for the Consumer Financial Protection Bureau.

Caudle argues that his due process rights were also violated because his staff representative did not meet with him before the hearing. *Id.* at 5. He contends he would have provided her "exculpatory evidence" that would have "allowed her to argue on his behalf." Caudle additionally claims that he was not allowed to have his statements recorded by the DHO and that the DHO was biased against him. Finally, he argues that there was no evidence to support a finding of guilt as required under the law. *Id.* In his Response, Caudle claims for the first time that his equal protection rights were also violated. ECF No. 7 at 1. He points to other instances involving BOP inmates where the BOP suspended their investigation of the inmates, pending criminal prosecution. *Id.* at 2–4. He therefore contends that he was treated differently than other similarly situated individuals.

Respondent argues that Caudle received all the due process to which he was entitled, that the DHO hearing was properly held once the FBI released Caudle's case to them, and that Caudle's staff attorney assisted him properly. ECF No. 5-1 at 6, 10. Respondent contends that Caudle's equal protection claim is not properly before the Court as it was first raised in response to his summary judgment motion. ECF No. 8 at 2. Alternatively, he argues that Caudle has failed to show that any alleged unequal treatment was the result of intentional discrimination or that he was part of a protected class. *Id.* at 3. Respondent further argues that Caudle cannot show that DHO Montgomery was biased against him or relied on improper factors to find him guilty of committing the prohibited act. *Id.* at 6.

## II. STANDARD OF REVIEW

Respondent's motion is styled as a Motion to Dismiss, or in the Alternative, for Summary Judgment. ECF No. 5-1. If the Court considers materials outside the pleadings, as the Court does here, the Court must treat a motion to dismiss as one for summary judgment. Fed. R. Civ. P.

12(d). When the Court treats a motion to dismiss as a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id*; see also *Laughlin v. Metropolitan Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998).

Summary judgment is appropriate if "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c), show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 322-23. A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1986). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

## III. DISCUSSION

### a. Due Process in Disciplinary Proceedings

Caudle argues that he did not receive due process during the disciplinary hearing. Specifically, Caudle argues that he had previously engaged in a verbal altercation with the DHO, rendering him biased, ECF No. 7 at 4; that he was not able to meet with his staff representative prior to the hearing, *id.* at 5; and that he was not permitted to make a statement, *id.* at 5–6. Respondent asserts that he is entitled to summary judgment and that Caudle's Petition should be dismissed because Caudle was afforded due process at the DHO Hearing and because the DHO's findings were based on "some evidence." For the reasons set forth below, there is no basis to overturn the DHO's findings because the hearings met basic due process requirements.

In prison disciplinary proceedings where an inmate faces the possible loss of diminution or good time credits, the inmate is entitled to certain due process protections, including: (1) advance written notice of the alleged violation; (2) a hearing at which the inmate is afforded the right to call witnesses and present evidence, so long as doing so is not "unduly hazardous to institutional safety or correctional goals"; (3) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (4) an impartial decision maker who has provided a written statement of the evidence relied upon and the reasons for any disciplinary action. *See Wolff v. McDonnell,* 418 U.S. 539, 564–71 (1974). There is no constitutional right to confront and cross-examine witnesses or to have retained or appointed counsel at a prison disciplinary hearing. *See Baxter v. Palmigiano,* 425 U.S. 308, 322 (1976); *Brown v. Braxton,* 373 F.3d 501, 504–05 (4th Cir. 2004). As long as the process meets these requirements and the hearing officer's decision contains a written statement of the evidence relied upon, due process is satisfied. *See Wolff,* 418 U.S. at 563.

Caudle's DHO Hearing met the due process requirements set forth in *Wolff*. First, he was given written notice of the charges on the day the Reporting Officer prepared the Incident Report and before the DHO Hearings. ECF No. 5-2 at 17. Second, Caudle was informed of his right to call witnesses and of his right to have a staff representative. He proceeded with a staff representative. *Id.* at 21–24. The staff representative was with him during the hearing, and reviewed his rights with him. Third, the DHO provided written statements of the evidence he relied upon and the reasons for disciplinary actions, which Caudle received. *Id.* at 26–29.

In addition, due process requires that "some evidence supports the decision by the prison disciplinary board to revoke good time credits." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985). This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced." *Id.* (quoting *United States ex rel. Vajtauer v. Comm'r of Immigration*, 273 U.S. 103, 106 (1927)). For example, in *Hill*, the Supreme Court found that a prison disciplinary board met due process requirements when it revoked inmates' good time credits based on an officer's indirect observation that they had assaulted another inmate. *See Hill*, 472 U.S. at 447-48, 456-57. There, the officer heard an inmate twice say loudly, "What's going on," saw an inmate bleeding from the mouth and suffering a swollen eye, and saw the charged inmates jogging away from the scene. *Id.* at 447-8. Even though there was no direct evidence that any one of the charged inmates had committed the assault, the Court concluded that the "meager" evidence was nevertheless sufficient to meet the due process requirement. *Id.* at 457. Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. *See Kelly v. Cooper*, 502 F. Supp. 1371, 1376 (E.D. Va. 1980).

Here, there is not a genuine dispute of material fact that DHO Montgomery relied on direct evidence from the reporting officer, as well as several pieces of documentary evidence, to

determine that Caudle violated BOP rules and used the mail for an illegal activity. *See* ECF No. 5-2 at 28. *See also* 28 C.F.R. § 541.3. Because there was "some evidence" to support the DHO's decisions, due process was afforded to Caudle. *See Hill*, 472 U.S. at 455–57.

### b. Enhanced Due Process at Disciplinary Proceedings Pending Criminal Charges

Caudle asserts that because he was subject to pending criminal prosecution at the time of the DHO hearing, he was entitled to enhanced due process and that his silence at the DHO hearing should not have been used against him in that proceeding. There is no basis in the law for this assumption. Respondent argues that Caudle was provided the "full panoply of rights" due criminal defendants with regard to the criminal proceedings brought against him in the Northern District of Ohio. ECF No. 5-1 at 6. Specifically, Respondent asserts that when BOP officials referred the matter to the FBI, the SIS department at FCI-Elkton suspended its local investigation. *Id.* at 7. Pursuant to BOP policy, once the FBI decides whether or not to prosecute, the FBI refers the matter back to the BOP institution to proceed with its disciplinary process. *See* ECF No. 5-1 at 7; ECF No. 5-2 at 19. Respondent maintains that to ensure that Caudle's *Miranda*[4] rights and the integrity of the federal investigation and prosecution were protected, BOP staff did not interview Caudle while the matter was referred to the FBI. ECF No. 5-1 at 7.

Caudle does not dispute that BOP suspended their investigation while the matter was referred to the FBI; however, he argues that BOP should have suspended its investigation until the pending criminal charges were <u>completely</u> resolved. ECF No. 7 at 5. However, there is no relevant authority that requires the BOP to postpone administrative sanctions until the conclusion of a criminal prosecution. Therefore, once the FBI released the case back to the BOP for administrative processing, the SIS department was free to complete its investigation and to

---

[4] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

9

conduct its internal disciplinary proceedings. *See Macia v. Williamson*, 219 F. App'x 229, 232–33 (3d Cir. 2007) ("Macia claims that the BOP violated his Constitutional rights and BOP policy by failing to suspend the disciplinary action pending possible criminal prosecution... The prison's failure to follow its own procedures will not result in a due process violation as long as the inmate is provided with the process he is due under *Wolff v. McDonnell*").

### c. Equal Protection Rights

Because Caudle's Fourteenth Amendment Equal Protection claim is raised for the first time in his response, it is not subject to court review. *See Middlebrooks v. Univ. of Md.*, 166 F.3d 1209 (unpublished) (affirming district court's determination that plaintiff's claim was untimely, where it was raised for the first time in the plaintiff's opposition to the defendant's motion for summary judgment); *Cutrera v. Board of Sup'rs of Louisiana State University*, 429 F.3d 108, 113–14 (5th Cir. 2005) (claim that is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court).

Even were the claim properly before the Court, it is without merit. The Equal Protection Clause requires that all people similarly situated be treated alike. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). This requires Caudle to demonstrate that he received different treatment from that received by other individuals similarly situated. *See id.* at 196–97.

Caudle has not shown that he was treated differently from other similarly situated individuals or that the unequal treatment was the result of intentional discrimination. The mere

fact that he cites to several legal cases where BOP inmates may have been subject to various types of administrative disciplinary proceedings and/or criminal prosecution does not establish disparate treatment and does not evince an equal protection claim as there is no showing that the other inmates were otherwise similarly situated to Caudle, or that he was "intentionally treated differently." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Respondent handled Caudle's case according to its policy, which instructed the "[s]taff may not question the inmate until the FBI or other investigative agency releases the incident report for administrative processing." ECF No. 5-2 at 19. Here, the administrative investigation was suspended until the FBI released all relevant information and material, in accordance with BOP policy. *Id.* at 4. As such, Respondent is entitled to summary judgment in his favor.

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2254, the court is required to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). The court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S 322, 327 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Although Caudle is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his ... part." *Miller-El*, 537 U.S. at 338.

Reasonable jurists would not find the Court's determination that Caudle is not entitled to federal habeas corpus relief to be debatable or wrong, or conclude that the issues presented

11

required further adjudication. Accordingly, the Court declines to issue a certificate of appealability.

## V. CONCLUSION

For the foregoing reasons, Respondent's Motion for Summary Judgment is granted. A separate Order shall issue.

Dated: March 16, 2018

/s/ George J. Hazel
GEORGE J. HAZEL
United States District Judge